UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

COMMERCE AND INDUSTRY
INSURANCE COMPANY,

    Plaintiff,

v.

WMS SOLUTIONS, LLC,

    Defendant.

Civil Action No. TDC-14-1182

**MEMORANDUM OPINION**

Before the court in this breach-of-contract action is Defendant WMS Solutions, LLC's Motion to Vacate Default, ECF No. 15. Having reviewed the pleadings, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motion is GRANTED.

**BACKGROUND**

On March 30, 2012, Plaintiff Commerce and Industry Insurance Company ("Commerce") issued a workers' compensation insurance policy for Defendant WMS Solutions, LLC ("WMS") for the period from March 30, 2012 through about March 30, 2013. Am. Compl. ¶ 9, ECF No. 9; *id.*, Ex. A (2012-2013 Policy), ECF No. 9-1. On April 14, 2013, Commerce issued a second policy, covering the period from April 14, 2013 to about April 14, 2014. *Id.* ¶ 10; Ex. B (2013-2014 Policy), ECF No. 9-2. Under the terms of these policies, WMS paid an "estimated premium" at the beginning of each policy period on the understanding that its final premium would be determined after the policy expired and would be based on WMS's actual payroll information for the coverage period. *Id.* ¶¶ 11, 14. The policies also provided that the actual

payroll information would be determined by Commerce during a post-policy audit of WMS's "payroll and disbursement records." *Id.* ¶¶ 12-13. For the 2012-2013 policy, WMS paid an estimated premium of $352,508.00. *Id.*, Ex. C (invoice), ECF No. 9-3. For the 2013-2014 policy, WMS paid an estimated premium of $195,947.00. *Id.*, Ex. D (invoice), ECF No. 9-4. Based on its audit of WMS's records, Commerce determined that WMS's final premium for the 2012-2013 policy was $773,528.00, which left WMS with an outstanding balance of $421,030.00. *Id.*, Ex. C. Commerce determined that WMS's final premium for the 2013-2014 policy was $429,636.00, which left WMS with an outstanding balance of $233,689.00. *Id.*, ¶ 18.[1] WMS was billed for both outstanding premium balances, totaling $654,719.00, but, to date, has not remitted any payment. *Id.* ¶ 21, Exs. C & D.

On April 10, 2014, Commerce filed a Complaint with this Court, ECF No. 1, which it amended on May 18, 2014, alleging breach of contract and unjust enrichment and seeking payment of the outstanding insurance premiums, pre-judgment and post-judgment interest, and reimbursement for all costs and fees associated with this litigation. Am. Compl. at 6. On May 30, 2014, WMS's accountant and resident agent, Kevin McNally, was served with a copy of the Amended Complaint. Mot. Vacate at 4, ¶¶ 2-3 (Affidavit of Kevin McNally). Based on that service date, WMS's Answer was due on June 20, 2014.

According to McNally, at the time the summons was served, Edward Woodings, WMS's principal, was out of the country, so McNally was "unable to speak with him regarding the service." *Id.* ¶ 4. Woodings returned to the country on or about June 9, 2014, but then left town again for a family vacation. *Id.* The day that Woodings returned from that vacation, McNally

---

[1] In the Complaint, the outstanding balance for 2013-2014 is listed as $233,689.00, while on the bill sent to WMS it is $233,709.00. Am. Compl. Ex. D. Because $233,689.00 is the figure alleged in the Complaint, the Court takes that as the operative outstanding balance.

left on his own vacation. During the period that Woodings was traveling, McNally "forgot[] to deliver the papers" served by Commerce to anyone at WMS. *Id.* ¶ 5. It was not until July 7, 2014 that McNally delivered Commerce's Complaint to WMS. *Id.*

Meanwhile, on June 27, 2014, one week after WMS's Answer was due, Commerce filed a Motion for Clerk's Entry of Default. ECF No. 12. That default was entered on June 30, 2014. On July 10, 2014, three days after McNally delivered the papers, WMS filed the present Motion to Vacate the Entry of Default. In that Motion, WMS explains that its default was not "willful," but was "simply a failure of the resident agent to forward the papers to the Defendant promptly." Mot. Vacate at 2, ¶ 4. WMS also asserts that it has a meritorious defense to the action because "the alleged audit that produced the balance claimed did not happen." *Id.* As to this defense, McNally in his Affidavit asserts that "[i]f an audit was going to be conducted I would have provided the financial documents for the audit, however, no audit was ever conducted." *Id.* at 5, ¶ 6.

WMS's appearance in the case prompted settlement discussions between the parties, and Commerce accordingly asked, with the consent of WMS, to extend its deadline to respond to WMS's Motion to Vacate. July 22, 2014 Mot. for Extension ¶ 2, ECF No. 16. That extension and a subsequent unopposed extension request were granted. *See* Jul. 23, 2014 and Aug. 7, 2014 Orders, ECF Nos. 17 & 19. On September 3, 2014, the parties submitted a joint motion to stay the case in which they informed the Court that they wished to proceed to private mediation, that they had agreed on a mediator, and that they "anticipate[d] that they could complete mediation by October 31." Sept. 3, 2014 Joint Mot. to Stay ¶ 8, ECF No. 21. The Court granted the requested stay on September 15, 2014. ECF No. 22. On October 31, 2014, the day the stay was to expire, the parties submitted a second motion to stay the proceedings, explaining that they had

3

previously agreed on November 6, 2014 as a mediation date and that "[i]n advance of the mediation," WMS was supposed "to produce documents related to its payroll" to enable Commerce to "further evaluate the case." Oct. 31, 2014 Joint Mot. to Stay ¶ 3, ECF No. 24. WMS, however, was still "in the process of obtaining the documents," so the parties were rescheduling their mediation session to December. Id. ¶ 4. They thus asked the Court to continue the stay until December 31, 2014. Id. ¶ 7. The Court granted that Motion on November 4, 2014. ECF No. 25.

On November 6, 11, 18, and 20, 2014, Commerce "followed up" with WMS about the documents. Dec. 31, 2014 Joint Mot. to Extend Stay ¶ 5, ECF No. 26. WMS still did not produce the requested records. On November 25, 2014, the parties' attorneys conferred and WMS agreed to produce by December 9, 2014 various tax and financial records for the period from March 30, 2012 to March 30, 2014. Id. ¶ 6. On December 4, 2014, WMS informed Commerce that it would provide the documents during the week of December 8, 2014, but it failed to meet that deadline. Id. ¶ 7. On December 15, 2014, WMS informed Commerce that it would provide the documents by December 18, 2014, but WMS again missed the deadline. Id. ¶ 8. On December 30, 2014, WMS's counsel informed Commerce's counsel that he had "emailed WMS's owner again asking for documents and that the documents could be produced within the next two weeks." Id. ¶ 9. Based on those representations, on December 31, 2014, the parties filed a third joint motion seeking to extend the stay to January 15, 2015, which the Court granted the same day. ECF Nos. 26 & 27.

On January 13, 2015, Commerce filed its Response in Opposition to WMS's Motion to Vacate in which it argued that the entry of default should not be vacated because WMS has engaged in a pattern of dilatory tactics that indicate it "is not taking these proceedings seriously

and is instead just putting off Commerce & Industry and the Court." Resp. in Opp'n at 6, ECF No. 28. WMS has not filed a Reply to Commerce's Response.

## DISCUSSION

In federal court, there is a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Accordingly, Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause." Determining whether to vacate an entry of default is "a matter which lies largely within the discretion of the trial judge." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006). "Generally, a default should be set aside where a moving party acts with reasonable promptness and alleges a meritorious defense." *Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). A court may also look to "the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic" when deciding whether to vacate a default. *Payne*, 439 F.3d at 204-05.

Here, WMS acted with reasonable promptness and appears to have alleged a meritorious defense. As to reasonable promptness, WMS filed its Motion to Vacate 10 days after the entry of default was entered. This relatively short period between the entry of default and WMS's motion is in line with what the Fourth Circuit has held to be reasonable promptness. *See Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010) (nine days); *Tazco, Inc. v. Dir. Office of Workers Comp. Program, U.S. Dept. of Labor*, 895 F.2d 949, 950 (4th Cir. 1990) (eight days). As for WMS's defense, to allege a meritorious defense, a defendant must "proffer ... evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v.*

*Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party."). Here, WMS submitted an affidavit from its accountant, McNally, in which McNally asserts that if an audit had been done, he "would have provided the [relevant] financial documents." Mot. Vacate ¶ 6. His assertion suggests, although does not specifically state, that Commerce never requested, and McNally therefore never provided, any records on which an audit could be based. *Id.* McNally thus concludes that "no audit was ever conducted." *Id.* If, for purposes of this Motion, the Court takes McNally's affidavit as true, then WMS has a potentially meritorious defense to Commerce's claim, namely that Commerce never conducted the audit that purportedly established that WMS had an outstanding premium balance.

Because WMS alleges a potentially meritorious defense and moved to vacate the default with reasonable promptness, its motion to vacate should, generally, be granted. *Consolidated Masonry*, 383 F.2d at 251. Commerce, however, points to other factors, *see Payne*, 439 F.3d at 204-05, in particular WMS's allegedly dilatory tactics in failing to turn over financial records as part of the parties' private settlement negotiations, and urges the Court to deny the Motion on that basis. These dilatory tactics are beyond the scope of the present Motion. This informal discovery was conducted outside and apart from this Court's oversight. While Commerce may reasonably believe that WMS handled that process in bad faith, WMS was under no legal obligation to provide the records requested. Instead, the parties, by mutual consent, chose not to resolve the Motion to Vacate, but rather to stay their proceedings before this Court in order to pursue a parallel, private course of action. The present motion, which was filed before that

6

informal settlement process began, therefore does not raise the question whether WMS engaged in that parallel process in good faith. It raises only the question whether WMS, as a threshold matter, has promptly moved to vacate the entry of default and has provided an adequate reason to allow it to defend against this claim. As explained above, WMS has carried that burden. WMS therefore has 14 days to file an Answer to Commerce's Complaint. Because the Court is mindful that WMS may not have been conscientious in its handling of this case, if WMS fails to timely file a responsive pleading, Commerce need not seek a second Entry of Default, but may instead file a Motion for Default Judgment.

## CONCLUSION

For the reasons stated above, the Motion to Vacate the Entry of Default is GRANTED.

Date: March 26, 2015

THEODORE D. CHUANG
United States District Judge